BROWN v CONTECH, DIVISION OF SEALED POWER
TECHNOLOGIES

Docket No. 160585. Submitted May 16, 1994, at Grand Rapids. De-
cided February 15, 1995; approved for publication May 31,
1995, at 9:10 A.M.

Kevin Brown injured his back in a work-related accident while
employed by Contech, a division of Sealed Power Technologies,
and underwent surgery. He then took a reemployment physical
examination that included a drug screen and returned to work
with a restriction against lifting more than forty-five pounds.
His employment was terminated when the result of the drug
screen indicated that he had used marijuana. He then obtained
other employment, which he terminated. He sought worker's
compensation benefits. A magistrate found that Brown had
sustained a work-related injury that resulted in partial disabil-
ity and rejected Contech's assertion that Brown should be
precluded from receiving benefits because he had been fired for
an alleged violation of the company drug policy. Contech ap-
pealed and the Worker's Compensation Appellate Commission
reversed the magistrate's decision and denied Brown benefits.
The commission stated that a physical limitation or restriction
was not the equivalent of a limitation of wage-earning capacity
and that the relevant inquiry was whether the claimant had
the ability to work at any other type of job suitable to the
claimant's training and qualifications. The commission con-
cluded that Brown had not proven a limitation of his wage-
earning capacity because the evidence showed that he could
still perform some aspects of his skill as a tool and die maker.
Brown appealed by leave granted alleging that the commssion
applied an incorrect definition of disability. Contech and its
worker's compensation insurer, National Union Fire Insurance
Company, cross appealed.

The Court of Appeals held:

1. The commission erred in applying an incorrect definition
of disability. The evidence showed that Brown's job required

REFERENCES
Am Jur 2d, Workers' Compensation §§ 321-367, 381, 399, 413.
See ALR Index under Workers' Compensation.

him to lift eighty to one hundred pounds and that, as a result of his work-related back injury, he was restricted from lifting more than forty-five pounds. Brown suffered a limitation in his wage-earning capacity in work suitable to his training and qualifications. The magistrate correctly applied the definition of disability provided in MCL 418.301(4); MSA 17.237(301)(4).

2. Where the unemployment of a partially disabled employee is directly attributable to a compensable injury, maximum benefits may be awarded.

3. Brown is not precluded from collecting worker's compensation benefits because of the fact that when he applied for and received unemployment compensation benefits he did not inform the Michigan Employment Security Commission that he needed restricted work.

4. An employee who refuses favored work without good cause may be terminated and be ineligible for worker's compensation benefits. Therefore, the matter must be reversed and remanded to determine, pursuant to MCL 418.301(5)(a); MSA 17.237(301)(5)(a), whether Brown was terminated from favored work for good cause.

Reversed and remanded.

1. WORKER'S COMPENSATION — DISABILITY.

Disability for purposes of worker's compensation means a limitation of an employee's wage-earning capacity in work suitable to the employee's qualifications and training resulting from a personal injury or work-related disease; an employee who suffers any limitation in wage-earning capacity in work suitable to the employee's qualifications and training is disabled (MCL 418.301[4]; MSA 17.237[301][4]).

2. WORKER'S COMPENSATION — PARTIAL DISABILITY.

Maximum worker's compensation benefits may be awarded where the unemployment of a partially disabled employee is found to be directly attributable to a compensable injury; the Bureau of Worker's Disability Compensation is not required to estimate the hypothetical extent of the employee's impairment.

3. WORKER'S COMPENSATION — UNEMPLOYMENT COMPENSATION — DISABILITY — JUDICIAL ESTOPPEL.

A representation made before the Michigan Employment Security Commission in order to secure unemployment benefits that a person is willing and able to work may not be used to preclude a subsequent worker's compensation claim of partial or total disability during the same period.

4. Worker's Compensation — Favored Work — Refusal.

An employee who without good cause refuses favored work may be terminated and be ineligible for worker's compensation benefits (MCL 418.301[5][a]; MSA 17.237[301][5][a]).

*Smit, Kragt & Geil, P.C.* (by *Timothy A. Kragt*), for the plaintiff.

*Kluczynski, Girtz & Vogelzang* (by *Duncan A. McMillan*), for the defendants.

Before: Doctoroff, C.J., and Taylor and M. G. Harrison,* JJ.

Per Curiam. Plaintiff appeals by leave granted a decision entered on December 28, 1992, by the Worker's Compensation Appellate Commission reversing a decision of a magistrate and denying him benefits. Contech (hereafter defendant) cross appeals. We reverse the decision of the WCAC and remand.

Plaintiff began working for defendant in August 1988 as a tool and die maker. Plaintiff repaired damaged dies. His job was considered skilled employment, and required bending, walking, and lifting. On occasion plaintiff lifted parts weighing eighty to one hundred pounds. He used machinery or obtained assistance when lifting heavier parts.

On October 16, 1989, plaintiff slipped on oil and fell to the floor at work. He felt pain in his right leg. The next morning plaintiff felt pain in his lower back and right leg. He consulted several physicians and, on January 25, 1990, underwent surgery on his lower back.

On June 7, 1990, plaintiff underwent a reemployment physical examination that included a drug screen. He returned to work the next day with a restriction against lifting more than forty-

_____
* Circuit judge, sitting on the Court of Appeals by assignment.

five pounds. Defendant believed that plaintiff's regular duties were within his restriction. On June 13, 1990, defendant received notice that plaintiff had tested positive for marijuana in his drug screen. Plaintiff's employment was terminated.

Thereafter, plaintiff obtained employment at Technical Sales & Service. This employment was within his restriction. After other employees complained about plaintiff's rate of pay, his employer reduced his hourly rate. Plaintiff stated that after his employer told him that he would be terminated because he did not work with sufficient speed, he terminated his employment.

Plaintiff sought worker's compensation benefits. At trial, plaintiff testified that he could do work that did not require excessive bending, twisting, or turning, and that did not require lifting more than forty-five pounds.

Two physicians testified through depositions. Dr. Merriman opined that plaintiff suffered a ruptured disc as a result of his fall at work. He concluded that plaintiff should be restricted from repetitive bending, stooping, and twisting, and that he should not lift more than forty-five pounds. Dr. Mahaney opined that plaintiff had recovered from surgery and that he could return to work. He stated that plaintiff should begin work with a forty-five-pound lifting restriction, but that such a restriction would be temporary.

In a decision mailed on March 5, 1991, the magistrate found that the evidence showed that plaintiff sustained a work-related injury to his back on October 16, 1989, and that the injury had resulted in a partial disability. The magistrate found that because of his injury plaintiff was unable to perform all aspects of his skilled job. The magistrate also rejected defendant's assertion that plaintiff should be precluded from receiving

benefits because he had been fired for an alleged violation of the company drug policy.

Defendant appealed and, in a two-to-one decision entered on December 28, 1992, the WCAC reversed the decision of the magistrate and denied benefits. The majority noted that MCL 418.301(4); MSA 17.237(301)(4) provided the applicable definition of disability:

> As used in this chapter, "disability" means a limitation of an employee's wage earning capacity in work suitable to his or her qualifications and training resulting from a personal injury or work related disease. The establishment of disability does not create a presumption of wage loss.

The WCAC majority stated that a physical limitation or physical restriction was not the equivalent of a limitation of wage-earning capacity; the relevant inquiry was whether the claimant had the ability to work at any other type of job suitable to his training and qualifications. The WCAC majority concluded that plaintiff had not proven a limitation of his wage-earning capacity because the evidence showed that he could still perform some aspects of his skill as a tool and die maker. In addition, he could work as a parts assembler.

Plaintiff argues that the WCAC erred in applying an incorrect definition of disability. We agree. The issue regarding the proper interpretation of § 301(4) was before this Court in *Rea v Regency Olds/Mazda/Volvo,* 204 Mich App 516; 517 NW2d 251 (1994). The *Rea* Court stated as follows:

> In *Fraley v General Motors Corp* [199 Mich App 280, 283; 500 NW2d 767 (1993)], this Court rejected the employer's argument that the employee could not satisfy the new definition of disability. Citing *Turrentine* [*v General Motors Corp,* 198 Mich App

572; 499 NW2d 411 (1993)], we held that the new definition did not apply, because the employee had been injured before the effective date of the new definition. Nonetheless, we considered whether the employee had proven by a preponderance of the evidence that he was disabled within the meaning of the new definition.

"In the present case, the WCAC applied the definition of disability to the facts and held as a legal conclusion, as discussed above:

" 'The record establishes that working around loud noises was what plaintiff did for most of his tenure at defendant. It was, therefore, work suitable to his qualifications and training. It is no longer suitable. He thus has a limitation in his wage-earning capacity under any statutorily valid definition of disability. The work he can still do establishes some earning capacity. The fact of work that he can no longer do safely establishes a limitation in wage-earning capacity.'

"Plaintiff's loss of high-frequency hearing limits his wage-earning capacity not only in the general field of his employment but also in work suitable to his qualifications and training. Because of his loss of high-frequency hearing and the further diminution of his hearing that would result from exposure to the loud noises of his workplace, plaintiff has suffered a limitation of his wage-earning capacity in work suitable to his qualifications and training." [199 Mich App 284-285.]

Therefore, *Fraley's* dicta agreed with the dissenting commissioner in this case that an employee is "disabled" under the new definition if he has lost any earning capacity in suitable work.

We concur with the *Fraley* dicta. We hold that an employee is "disabled" under the new definition if the employee suffers from any limitation in wage-earning capacity in work suitable to the employee's qualifications and training. We reject the WCAC majority's implicit interpretation of the new definition which requires a complete loss of wage-earning capacity in suitable work to establish a disability. [204 Mich App 522-523.]

In this case, the evidence showed that plaintiff's job as a tool and die maker required him to lift parts weighing eighty to one hundred pounds. As a result of his work-related back injury, plaintiff was restricted from lifting more than forty-five pounds. Under *Rea, supra,* plaintiff suffered a limitation in his wage-earning capacity in work suitable to his training and qualifications. The magistrate correctly applied the definition of disability in § 301(4).

Noting that the magistrate found that plaintiff was only partially disabled, defendant contends that had the WCAC not reversed the magistrate's award, it would have been required to remand the case to the bureau for a calculation, in dollars and cents, of the proportionate extent of the impairment of plaintiff's wage-earning capacity. The authority cited by defendant, *Sobotka v Chrysler Corp (On Rehearing),* 198 Mich App 455; 499 NW2d 777 (1993), was recently reversed by the Michigan Supreme Court. 447 Mich 1; 523 NW2d 454 (1994). The Supreme Court held that where the unemployment of a partially disabled employee is found to be directly attributable to the compensable injury, maximum benefits may be awarded. The agency is not required to estimate the hypothetical extent of the employee's impairment. *Id.*

Next, defendant notes that following his termination, plaintiff applied for and received unemployment compensation benefits. Defendant states that because plaintiff presented no evidence to suggest that he informed the Michigan Employment Security Commission that he needed restricted work, he should be estopped from collecting worker's compensation benefits. The Michigan Supreme Court recently rejected this argument in *Paschke v Retool Industries,* 445 Mich 502; 519

NW2d 441 (1994), and held that a representation before the MESC that a person is willing and able to work may not be used to preclude a subsequent claim for worker's compensation disability benefits. Plaintiff is therefore not precluded from collecting worker's compensation benefits.

Defendant contends that, assuming arguendo, plaintiff established a work-related disability, he was not entitled to benefits because he was fired for just cause. In essence, defendant's claim is that if plaintiff is entitled to favored work, he can nonetheless be discharged for just cause unrelated to the disability. Accordingly, defendant argues that when plaintiff arrived to commence favored work and failed the drug screen, he could have been terminated just as a nonfavored-work employee could have been.

In response, plaintiff argues that MCL 418.301(5)(e); MSA 17.237(301)(5)(e) precludes this. He asserts that this section of the Worker's Disability Compensation Act replaced the doctrine of favored work with the doctrine of reasonable employment. Plaintiff contends that, pursuant to § 301(5)(e), an employee in favored work who loses his job for whatever reason during the first one hundred weeks of favored work is entitled to receive worker's compensation benefits. Plaintiff's interpretation of § 301(5)(e) misconstrues the import of this entire section of the act because it ignores the fact that MCL 418.301(5)(a); MSA 17.237(301)(5)(a), which states the qualifications for terminating favored work, is controlling. In other words, an employee can be terminated and his worker's compensation benefits relinquished if he refuses such work without good cause. This was the law regarding favored work that the Legislature codified in § 301(5). See, e.g., *Coon v Rycenga Homes*, 146 Mich App 262; 379 NW2d 480 (1985). We have

recognized that these amendments were designed to be consistent with past precedent in the area of favored work. *Lee v Koegel Meats,* 199 Mich App 696, 702-703; 502 NW2d 711 (1993). Section 301(5)(e) only establishes the rate at which payment will be made, assuming the employee is otherwise qualified to receive benefits pursuant to § 301(5)(a). This has been well articulated, and in fact we are bound by the construction of § 301(5) in *Lee, supra.*

In *Lee, supra* at 702, this Court cogently articulated the analysis to be used in applying § 301(5):

> Subsection 301(5)(e) follows subsections b, c and d, the latter containing three subsections, i-iii, all of which deal with the level of benefits to be paid, and not whether benefits are to be paid in a certain situation. Section 301(5)(e), by its terms, simply indicates that, *if plaintiff is otherwise entitled to benefits,* then because she was in favored work less than one hundred weeks, whatever the reason for losing her job, her benefit level should be based on her wages at the original date of injury.
>
> The commission was therefore correct in first looking to § 301(5)(a). [Emphasis added.]

Accordingly, this matter must be remanded to determine, pursuant to § 301(5)(a), whether plaintiff was terminated from favored work for good cause as defendant asserts.

Reversed and remanded.