RUSSELL v WHIRLPOOL FINANCIAL CORPORATION

Docket No. 111255. Argued October 13, 1999 (Calendar No. 4). Decided March 29, 2000.

Arlene A. Russell was awarded worker's compensation for a closed period during which she took a leave of absence from her employment with Whirlpool Financial Corporation to undergo surgery for carpal tunnel syndrome. She returned to work, but later the same year stopped attending work altogether. Shortly afterward, Whirlpool terminated her employment for absenteeism. Following a hearing, a magistrate concluded that she had unreasonably refused favored work. She received an open award of benefits beginning after the period of refusal. The WCAC reversed on the ground that the plaintiff lost her entitlement to benefits when she abandoned her job. The Court of Appeals, SAAD, P.J., and REILLY, J. (NEFF, J., dissenting), affirmed in an unpublished opinion per curiam (Docket No. 191892). The plaintiff appeals.

In a unanimous opinion by Justice CAVANAGH, the Supreme Court *held*:

When a disabled employee has been employed pursuant to MCL 418.301(5); MSA 17.237(301)(5) for less than one hundred weeks, subsection (e) governs benefit reinstatement if the disabled employee loses the job after the period of unreasonable refusal under subsection (a) ends. An employer cannot evade the requirements of subsection (e) by claiming that the employee was discharged for just cause.

1. An employee, who has established benefit entitlement pursuant to the terms of subsection 301(5), has a right to benefit continuation even if terminated for just cause. Subsection 301(5) is designed to determine a disabled employee's entitlement to benefits. Subsections (a) through (e) provide guidelines for making entitlement determinations. Subsection (a) prescribes the course of action to be taken when an employee is out of work as a result of an unreasonable refusal of an existing offer of work; subsection (e) contemplates a situation where the relationship between the employee and the employer has been severed by the employer.

2. Although the employee's right to receive benefits may be suspended temporarily during a period of unreasonable refusal, the

statute does not support permanent forfeiture. Subsection 301(5)(a) provides that an employer must pay benefits or extend a reasonable offer of favored work to an employee who has established a disability pursuant to subsection 301(4). Subsection 301(5)(a) suspends the employer's duty temporarily when the employee unreasonably refuses a reasonable offer, but the employee retains the right to end the period of refusal at any time. An employee who ends the period of unreasonable refusal, but is later terminated can pursue a remedy under subsection (e).

Reversed and remanded.

*Smit, Kragt & Geil* (by *Leonard J. Smit*) for plaintiff-appellant.

*Butzbaugh & Dewane, P.L.C.* (by *John E. Dewane*), for defendant-appellee.

Amicus Curiae:

*Conklin, Benham, Ducey, Listman & Chuhran, P.C.* (by *Martin L. Critchell*), for Michigan Self-Insurers' Association.

CAVANAGH, J. This worker's compensation case arises under subsection 301(5) of the Worker's Disability Compensation Act (WDCA), MCL 418.301(5); MSA 17.237(301)(5).[1] The primary issue is whether an

---

[1]    (5) If disability is established pursuant to subsection (4), entitlement to weekly wage loss benefits shall be determined pursuant to this section and as follows:

(a) If an employee receives a bona fide offer of reasonable employment from the previous employer, another employer, or through the Michigan employment security commission and the employee refuses that employment without good and reasonable cause, the employee shall be considered to have voluntarily removed himself or herself from the work force and is no longer entitled to any wage loss benefits under this act during the period of such refusal.

\*    \*    \*

(e) If the employee, after having been employed pursuant to this subsection for less than 100 weeks loses his or her job for

employer must pay worker's compensation benefits to a disabled employee who is terminated after ending a subsection 301(5)(a) period of unreasonable refusal.[2] We hold that subsection 301(5)(e) requires benefit payment to an employee who, after having been employed pursuant to subsection 301(5) for less than one hundred weeks, ends a period of refusal, but subsequently loses the job.[3] The Court of Appeals and Worker's Compensation Appellate Commission (WCAC) erroneously terminated the plaintiff's benefits. We reverse the decision of the Court of Appeals and remand to the WCAC for findings consistent with this opinion.

## I. FACTS

Plaintiff Russell worked in a clerical position at Whirlpool Corporation. During that time, she developed carpal tunnel syndrome and other ailments associated with the use of her hands. In 1993, she took leave and underwent surgery. She later returned to work, and defendant Whirlpool contends that Russell

---

whatever reason, the employee shall receive compensation based upon his or her wage at the original date of injury.

[2] This case was argued before the Court in consolidation with *McJunkin v Cellasto Plastic Corp*, 461 Mich 590; 608 NW2d 57 (2000), and *Perez v Keeler Brass Co*, 461 Mich 602; 608 NW2d 45 (2000). Many of the issues discussed in this opinion are related to the issues before the Court in *McJunkin* and *Perez*.

[3] We note that subsection 301(5)(d) governs benefit entitlement for employees who are terminated after having been employed pursuant to subsection 301(5) for one hundred weeks or more. The language of subsection (d) provides that an employee on favored work for one hundred weeks or more is entitled to compensation only if the employee loses the job through "no fault of the employee." We recognize that subsection (e) may give rise to an award of benefits in a wider array of circumstances than would subsection (d), but the holding of the present case is limited to claims arising under subsection 301(5)(e).

did not complain about her medical condition at that time. On July 29, 1993, Russell stopped attending work altogether.[4]

In August 1993, Whirlpool sent Russell a certified letter requesting that she provide documentation of her condition. According to Whirlpool, Russell failed to respond. On August 31, 1993, Whirlpool sent Russell a letter indicating that her employment was terminated "effective July 29, 1993." At that point, Russell had already expressed a willingness to return to work. Nonetheless, her wages ceased on September 1, 1993. The company indicated that Russell was terminated because she violated a company policy that required documentation for absences exceeding five days. Company personnel also testified that Russell's work had been substandard since the spring of 1993.

### II. PROCEEDINGS BELOW

The magistrate concluded that the plaintiff had unreasonably refused favored work, and that the period of refusal spanned from July 29, 1993, to August 23, 1993. The magistrate awarded Russell benefits for the closed period of her surgery (January 16, 1993, to February 22, 1993) and an open award for

---

[4] The parties dispute whether Russell's absence from work was caused by her medical condition. Russell claims that she requested a meeting with management regarding a job change because of her inability to use her hands effectively. She testified that she was unable to procure a new job assignment, and that she eventually developed headaches, tension, and gastrointestinal problems. Russell associated these problems with her inability to perform her job. Whirlpool claims that Russell stopped attending work with very little explanation.

the period beginning on August 23, 1993.[5] At the hearing, three orthopedic surgeons provided medical testimony. Dr. Lischer, the orthopedic surgeon who had previously diagnosed Russell with carpal tunnel syndrome, testified that she had also developed tendinitis. The remaining two physicians disagreed about whether a relationship existed between Russell's work and her development of carpal tunnel syndrome, and whether the plaintiff should return to "hand-intensive" work. The magistrate found that Russell's carpal tunnel syndrome was in fact related to her employment, and that she ceased working for a combination of medical and nonmedical reasons.

A split two-to-one panel of the WCAC reversed the open award and affirmed the closed award, stating that "[a]n employer should not be required to hold open a position, favored or not, for an employee that has been fired for refusing to comply with company rules and for abandoning her job." 1995 Mich ACO 2666, 2672. The WCAC concluded that the magistrate erroneously found that Russell had left her job because of her carpal tunnel syndrome. According to the panel, Russell had already been accommodated for her carpal tunnel injury, and left her job only for non-work-related injuries. Relying on *Lee v Koegel*

---

[5] The magistrate ruled that plaintiff had forfeited her benefits during the period between July 29, 1993, and August 3, 1993, because she failed to provide appropriate documentation of her injury. The magistrate then stated that the period of refusal went until August 23. There is some confusion about why two separate sets of dates are used; however, August 23, 1993, appears to be the date benefits recommenced. We consider August 23, 1993, to be the date that Russell made herself available to work. Also, there is some confusion regarding the date of Russell's termination. The Court of Appeals considered the date of termination to be August 31, 1993. We, likewise, treat August 31, 1993, as the date of termination.

*Meats,* 199 Mich App 696; 502 NW2d 711 (1993), and *Brown v Contech,* 211 Mich App 256; 535 NW2d 195 (1995), the WCAC held that Russell lost her entitlement because she refused work without good cause.

The Court of Appeals agreed with the WCAC's assessment that Russell was terminated for good cause, and held that the plaintiff's entitlement to benefits was lost because of her own misconduct. Unpublished opinion per curiam, issued December 19, 1997 (Docket No. 191892). The dissenting opinion argued that the question did not hinge on potential misconduct, but whether there was an unreasonable refusal to continue favored work. This Court is authorized to review questions of law involved with any order of the WCAC. MCL 418.861a(14); MSA 17.237(861a)(14). Questions of law are reviewed de novo. *Cardinal Mooney High School v Michigan High School Athletic Ass'n,* 437 Mich 75, 80; 467 NW2d 21 (1991).

### III. WDCA SUBSECTION 301(5)

Cases involving the termination of benefits pursuant to WDCA subsection 301(5) require that the court make several determinations. Specifically, courts must examine (1) whether the plaintiff is disabled, MCL 418.301(4); MSA 17.237(301)(4); *Haske v Transport Leasing Inc, Indiana,* 455 Mich 628; 566 NW2d 896 (1997), (2) whether a reasonable offer of favored work has been extended, MCL 418.301(5)(a); MSA 17.237(301)(5)(a); *Price v City of Westland,* 451 Mich 329; 547 NW2d 24 (1996), and (3) whether a reasonable offer of favored work has been unreasonably refused, MCL 418.301(5)(a); MSA 17.237(301)(5)(a); *Pulver v Dundee Cement Co,* 445 Mich 68; 515 NW2d 728 (1994). Subsection 301(5) also addresses itself to

situations involving the termination of disabled employees who have been employed pursuant to the favored work provisions of § 301. We now address benefit entitlement *after* an employee who has been employed pursuant to subsection 301(5) for less than one hundred weeks ends a period of unreasonable refusal and is subsequently terminated. MCL 418.301(5)(a), (e); MSA 17.237(301)(5)(a), (e).

### IV. DECISIONS BELOW

The WCAC determined that Russell forfeited her right to benefits. We reject the WCAC's view because we believe that the commission relied on erroneous authority. Similarly, we disagree with the Court of Appeals conclusion that an employee discharged pursuant to a company policy against absenteeism can permanently forfeit subsection 301(5) benefits under "misconduct" principles. We need not determine whether Russell was terminated for just cause, because we hold that, when an employee has been employed pursuant to subsection 301(5) for less than one hundred weeks, termination for "just cause" would constitute losing one's job "for whatever reason."

### A. THE RELATIONSHIP BETWEEN SUBSECTIONS (a) AND (e)

Both the WCAC and Court of Appeals relied on *Brown, supra.* In *Brown,* the defendant argued that because the plaintiff was fired for good cause, he was not entitled to worker's compensation benefits. The plaintiff countered that if an injured employee is fired within the first one hundred weeks of employment, he is entitled to benefits regardless of the purpose for

discharge. The Court of Appeals held that the plaintiff could only receive benefits if he met the requirements laid out in (a), (b), or (c), and that subsection (e) should *not* be construed to mean that an employee is entitled to a continuation of benefits even if the employee is discharged for good cause. Instead, subsection (e) should be used only to calculate the rate of compensation when an employee is otherwise qualified to receive benefits under subsections (a), (b), or (c). The *Brown* Court relied upon *Lee, supra,* which also held that subsection (e) should be used only to set the amount of damages.

We disagree with both *Brown* and *Lee* because the plain language of subsection 301(5)(e) makes it clear that an employee, who has established benefit entitlement pursuant to the terms of subsection 301(5), has a right to benefit continuation even if the employee is terminated for just cause. Subsection 301(5) is designed to determine a disabled employee's entitlement to benefits. Subsections (a) through (e) provide guidelines for making entitlement determinations under a variety of circumstances. Pursuant to subsection 301(5)(a), an employee loses an entitlement to benefits during a period in which the employee unreasonably refuses a reasonable offer of work:

> If an employee receives a bona fide offer of reasonable employment from the previous employer, another employer or through the Michigan employment security commission and the employee refuses that employment without good and reasonable cause, the employee shall be considered to have voluntarily removed himself or herself from the work force and *is no longer entitled to any wage loss benefits under this act during the period of such refusal.* [Emphasis added.]

Conversely, subsection 301(5)(e) provides:

> If the employee, after having been employed pursuant to
> this subsection for less than 100 weeks loses his or her job
> *for whatever reason,* the employee shall receive compensa-
> tion based upon his or her wage at the original date of
> injury. [Emphasis added.]

Thus, while subsection 301(5)(a) prescribes the
course of action to be taken when an employee is out
of work as a result of his own unreasonable refusal,
subsection 301(5)(e) contemplates a situation where
the relationship between the employee and the
employer has been severed by the employer.

The distinctions between subsections 301(5)(a) and
(e) are significant. Subsection (a) should be applied
in situations where an employee unreasonably refuses
an existing offer of work. Similarly, subsection (e)
can readily be invoked when an employer terminates
an employee who is performing favored work. Essen-
tially, subsection (a) is designed to restrict benefit
payment, whereas subsection (e) mandates payment
under certain circumstances.

When an employee refuses an offer of favored
work, subsection (a) operates to suspend benefits
*during the period of refusal.* The statutory reference
to a "period" implies that the employee retains the
right to end his refusal at some point in the future. At
that point, the benefit reinstatement provisions of
subsection 301(5) come into play.

Subsection 301(5) does not grant the employer the
right to terminate the employee's ability to return to
work. In fact, subsection 301(5)(e) provides that an
employee who loses his favored-work position *"for
whatever reason"* shall continue to receive benefits.

The plain language of subsection 301(5)(e) considers the possibility that an employee on favored work might lose a job for "just cause." When the employee has been employed pursuant to subsection 301(5) for less than one hundred weeks, the Legislature has decided that benefit availability continues.

Although the employee's right to receive benefits may be suspended *temporarily* during a period of unreasonable refusal, the statute simply does not support permanent forfeiture. Subsection 301(5)(a) provides that an employer must pay benefits or extend a reasonable offer of favored work to an employee who has established a disability pursuant to subsection 301(4). Subsection 301(5)(a) suspends the employer's duty temporarily when the employee unreasonably refuses a reasonable offer, but the employee retains the right to end the period of refusal at any time. If the employee ends the period of unreasonable refusal, but is later terminated, then the terminated employee can pursue a remedy under subsection (e).

### B. APPLICATION

Russell's unreasonable refusal spanned from July 29, 1993, to August 23, 1993. During that period, she forfeited her benefit entitlement pursuant to subsection 301(5)(a). On August 23, when Russell ended the statutory period of refusal, the employer became required to provide a reasonable offer of favored work or to provide benefits. When she was terminated on August 31, 1993, she remained entitled to benefits, though the source of her benefit entitlement shifted to subsection 301(5)(e).

V. CONCLUSION

We hold that, when a disabled employee has been employed pursuant to subsection 301(5) for less than one hundred weeks, subsection 301(5)(e) governs benefit reinstatement if the disabled employee loses the job after the subsection 301(5)(a) period of unreasonable refusal ends. An employer cannot evade the requirements of subsection 301(5)(e) by claiming that the employee was discharged for "just cause."

Reversed and remanded.

WEAVER, C.J., and KELLY, TAYLOR, CORRIGAN, YOUNG, and MARKMAN, JJ., concurred with CAVANAGH, J.