SINGTON v CHRYSLER CORPORATION

Docket No. 225847. Submitted February 14, 2001, at Detroit. Decided May 1, 2001, at 9:10 A.M. Leave to appeal sought.

Charles Sington sought worker's compensation wage-loss benefits for injuries to both shoulders during the course of his employment with Chrysler Corporation. In June 1994, the plaintiff injured his left shoulder during the course of his employment, requiring him to undergo surgery on that shoulder. When he returned to work in January 1995, he remained under medical restrictions concerning the range of motion to which the shoulder could be subjected and was assigned to jobs consistent with the medical restrictions. In August 1996, he had surgery on his right shoulder and was again given light work when he returned to work in November 1996. In March 1997, the plaintiff, while on vacation, suffered a stroke that was not work-related and that rendered him permanently and totally disabled. It was stipulated that the injury to the left shoulder was work-related, and the magistrate determined that the injury to the right shoulder was not work-related. Despite the existence of a work-related injury to the plaintiff's left shoulder, the magistrate denied benefits, finding that the plaintiff had not been performing "reasonable employment" on his last day of work. Accordingly, the magistrate concluded that the "reasonable employment" of subsection 301(5) of the Worker's Disability Compensation Act (WDCA), MCL 418.301(5), did not apply to the plaintiff and held that the plaintiff had not suffered a compensable disability because the left shoulder injury did not result in a wage loss. The Worker's Compensation Appellate Commission (WCAC) affirmed the magistrate's denial of benefits, holding that the plaintiff's reliance on *Powell v Casco Nelmor Corp*, 406 Mich 332 (1979), was misplaced because the Legislature's adoption of subsection 301(5) nullified the holding in *Powell* and upholding the magistrate's factual finding that the plaintiff was not engaged in reasonable employment within the meaning of subsection 301(5) on his last day of work. The plaintiff appealed by leave granted.

The Court of Appeals *held*:

1. In worker's compensation cases, the judiciary reviews the decision of the WCAC rather than the decision of the magistrate.

Questions of law are reviewed de novo, but the factual findings of the WCAC are deemed conclusive as long as there exists any evidence supporting the decision of the WCAC and the WCAC did not misapprehend its administrative appellate role. Nevertheless, a decision of the WCAC is subject to reversal if it is based on erroneous legal reasoning or the wrong legal framework.

2. The Supreme Court's holding in *Powell* that an employee's "inability to continue favored work, where that inability arises from a supervening event for which the worker is not responsible, does not create a legal bar" to wage-loss benefits is consistent with the reasonable employment provisions contained in subsection 301(5) of the WDCA. Accordingly, the WCAC erred as a matter of law in holding that the Legislature's 1982 amendment of the WDCA by the adoption of the provisions of subsection 301(5) nullified the Supreme Court's 1979 holding in *Powell*.

3. The WDCA allows an employer to limit potential exposure for worker's compensation benefits by offering an injured employee reasonable employment, which is defined in subsection 301(9), MCL 418.301(9), as work that is within the employee's capacity to perform and that poses no clear and proximate threat to the employee's health and safety. If an employee accepts an employer's offer of reasonable employment and subsequently loses that job "through no fault of the employee" or "for whatever reason," the employee is entitled to receive wage-loss benefits in accordance with subsection 301(5).

4. Although the plaintiff returned to his former job as a floater, which required him to perform a number of different jobs, the evidence showed that the plaintiff did not perform all his former preinjury job duties and that he was required to perform jobs that were within his medical restrictions. An offer of reasonable work may include an offer of the employee's regular position, as long as that position involves work that is within the employee's capacity to perform and that poses no clear and proximate threat to the employee's health and safety. The WCAC erred in focusing on the job duties that the plaintiff remained able to perform, rather than the job duties that the plaintiff's work-related shoulder injury rendered him unable to perform. The WCAC based its decision that the plaintiff was not subject to the provisions of subsection 301(5) on its erroneous belief that an employee's return to the preinjury job, even where the return included restrictions on job duties to accommodate medical restrictions, precluded a finding that the former job was reasonable employment within the meaning of subsection 301(9). On this evidence, it is clear as a matter of law that the

plaintiff was offered reasonable employment and that subsection 301(5) is applicable.

5. Although the Supreme Court held in *Haske v Transport Leasing, Inc, Indiana*, 455 Mich 628 (1997), that a work-related injury is not compensable unless the employee establishes a reduction in earning capacity, an employee who has been offered, has accepted, and has begun to perform "reasonable employment" so as to be subject to the provisions of subsection 301(5) is not subject to the general requirement of *Haske* that the wage loss must be causally linked to the work-related injury.

Reversed and remanded for further proceedings.

1. WORKER'S COMPENSATION — REASONABLE EMPLOYMENT — FAVORED WORK.

The Legislature's 1982 adoption of the reasonable employment provisions of subsection 301(5) of the Worker's Disability Compensation Act did not nullify the Supreme Court's 1979 holding in *Powell v Casco Nelmor Corp*, 406 Mich 332 (1979), that an employee's inability to continue favored work, where that inability arises from a supervening event for which the worker is not responsible, does not create a legal bar to wage-loss benefits (MCL 418.301[5]).

2. WORKER'S COMPENSATION — REASONABLE EMPLOYMENT — LOSS OF REASONABLE EMPLOYMENT — WAGE-LOSS BENEFITS.

An employer may limit its potential exposure for worker's compensation benefits by offering an injured employee reasonable employment, which is statutorily defined as work that is within the employee's capacity to perform and that poses no clear and proximate threat to the employee's health and safety; an employee who accepts an employer's offer of reasonable employment and subsequently loses that job through no fault of the employee or for whatever reason is entitled to receive wage-loss benefits in accordance with the reasonable work provisions of the Worker's Disability Compensation Act (MCL 418.301[5], [9]).

3. WORKER'S COMPENSATION — REASONABLE EMPLOYMENT — PROOF OF WAGE LOSS.

An employee who has been offered, has accepted, and has begun to perform reasonable employment so as to be subject to the reasonable employment provisions of the Worker's Disability Compensation Act and who subsequently leaves that reasonable employment through no fault of the employee or for whatever reason and seeks wage-loss benefits pursuant to the reasonable employment provisions is not subject to the general requirement that the wage loss must be causally linked to the work-related injury (MCL 418.301[5]).

*Zamler, Mellen, Shiffman & Kay, P.C.* (by *Paul S. Rosen*) (*Daryl Royal*, of counsel), for the plaintiff.

*Kemp, Klein, Umphrey & Endelman* (by *Valencia L. Jarvis*), for the defendant.

Before: SMOLENSKI, P.J., and JANSEN and FITZGERALD, JJ.

SMOLENSKI, P.J. Plaintiff appeals by leave granted from the Worker's Compensation Appellate Commission (WCAC) order dated February 14, 2000, which affirmed the magistrate's decision denying plaintiff's claim for weekly wage-loss benefits. We reverse and remand to the WCAC for further proceedings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff worked for defendant over the course of twenty-six years, from 1971 to 1997. Plaintiff performed various production jobs for defendant over the course of his career, including working as an assembler, as a press operator, and stacking and loading parts and equipment. During his last three years of employment, between 1994 and 1997, plaintiff experienced problems with his shoulders and upper arms that affected his ability to work. Plaintiff underwent two surgeries, returning to work after each surgery under medical restrictions related to his upper arm and shoulder use. In March 1997 while on vacation, plaintiff suffered a stroke that rendered him permanently and totally disabled.[1]

Plaintiff filed a petition for worker's compensation benefits, alleging work-related injuries to both shoul-

---

[1] There is no dispute that the stroke was not work-related.

ders. At trial, the magistrate accepted the parties' stipulation that plaintiff's left shoulder injury was work-related, but determined that plaintiff's right shoulder injury was not work-related.[2] Despite the existence of a work-related injury to plaintiff's left shoulder, the magistrate nevertheless denied plaintiff's claim for worker's compensation benefits. The magistrate's decision rested on two main determinations. First, the magistrate held that plaintiff was not performing "reasonable employment" on his last day of work. Therefore, the magistrate concluded that the "reasonable employment" provisions of the Worker's Disability Compensation Act (WDCA), set forth in MCL 418.301(5), did not apply to plaintiff. Second, the magistrate determined that plaintiff's left shoulder injury did not result in a wage loss. Applying *Haske v Transport Leasing, Inc, Indiana*, 455 Mich 628; 566 NW2d 896 (1997), the magistrate determined that plaintiff was not entitled to worker's compensation benefits because he had not established a compensable disability.

Plaintiff appealed the magistrate's decision to the WCAC, which affirmed the denial of benefits. The WCAC's decision also rested on two main determinations. First, the WCAC rejected plaintiff's reliance on *Powell v Casco Nelmor Corp*, 406 Mich 332; 279 NW2d 769 (1979), holding that the Legislature's adoption of the WDCA "reasonable employment" provisions nullified *Powell's* holding. Second, the WCAC upheld the magistrate's factual finding that plaintiff was not engaged in "reasonable employment" on his last day

---

[2] On appeal, plaintiff does not challenge the magistrate's finding that his right shoulder injury was not work-related.

of employment, but was performing his "regular job." Plaintiff appeals by leave granted from the WCAC's decision denying his claim for benefits. We reverse.

## II. STANDARD OF REVIEW

In worker's compensation cases, the judiciary reviews the decision of the WCAC, not the decision of the magistrate. *Mudel v Great Atlantic & Pacific Tea Co*, 462 Mich 691, 709; 614 NW2d 607 (2000). We review de novo those questions of law involved in any final order of the WCAC. *Id.* at 697, n 3; *DiBenedetto v West Shore Hosp*, 461 Mich 394, 401; 605 NW2d 300 (2000); MCL 418.861a(14). However, we review the WCAC's factual findings under the "any evidence" standard:

> As long as there exists in the record any evidence supporting the WCAC's decision, and as long as the WCAC did not misapprehend its administrative appellate role (e.g., engage in de novo review; apply the wrong rule of law), then the judiciary must treat the WCAC's factual decisions as conclusive. [*Mudel, supra* at 703-704.]

See also MCL 418.861a(14). Nevertheless, "a decision of the WCAC is subject to reversal if it is based on erroneous legal reasoning or the wrong legal framework." *DiBenedetto, supra* at 401-402.

### III. CONTINUED VALIDITY OF *POWELL V CASCO NELMOR CORP*

Plaintiff argued below that his stroke, a supervening medical condition that was not work-related, should not operate as a bar to receipt of wage-loss benefits occasioned by his left shoulder injury. Plaintiff relied on *Powell, supra* at 351-352, where our

Supreme Court held that an employee's "inability to continue favored work, where that inability arises from a supervening event for which the worker is not responsible, does not create a legal bar" to wage-loss benefits. The WCAC rejected plaintiff's argument, holding that the Legislature nullified *Powell* when it adopted MCL 418.301(5). The WCAC held:

> First, plaintiff's attempt to utilize *Powell v Casco Nelmor Corp*, 406 Mich 332 (1979) for the proposition that intervening non-work-related events cannot act to cut off benefit entitlement must fail. The point is not, as plaintiff argues, that the Michigan Supreme Court has never expressly overruled *Powell*. The point is that the Michigan Legislature did, by passing the reasonable employment provision in the Act.

In 1982, the Legislature amended the WDCA to include the "reasonable employment" provisions.[3] The WDCA provides, in relevant part:

> (5) If disability is established pursuant to subsection (4), entitlement to weekly wage loss benefits shall be determined pursuant to this section and as follows:
>
> (a) If an employee receives a bona fide offer of reasonable employment from the previous employer, another employer, or through the Michigan employment security commission and the employee refuses that employment without good and reasonable cause, the employee shall be considered to have voluntarily removed himself or herself from the work force and is no longer entitled to any wage loss benefits under this act during the period of such refusal.

*     *     *

---

[3] See 1981 PA 200. Before that time, the WDCA did not address the concept and the issue was governed by an area of the common law known as the "favored-work doctrine." *Perez v Keeler Brass Co*, 461 Mich 602, 606; 608 NW2d 45 (2000).

(d) If the employee, after having been employed pursuant to this subsection for 100 weeks or more loses his or her job through no fault of the employee, the employee shall receive compensation under this act pursuant to the following:

\*      \*      \*

(e) If the employee, after having been employed pursuant to this subsection for less than 100 weeks loses his or her job for whatever reason, the employee shall receive compensation based upon his or her wage at the original date of injury. [MCL 418.301.]

Our Supreme Court has never expressly spoken concerning the continued validity of *Powell* in light of the Legislature's adoption of subsection 301(5) of the WDCA.[4] However, in *Lee v Koegel Meats*, 199 Mich App 696; 502 NW2d 711 (1993), overruled in part by *Russell v Whirlpool Financial Corp*, 461 Mich 579, 586; 608 NW2d 52 (2000),[5] this Court reviewed the WCAC's holding that the Legislature's adoption of sub-

---

[4] In a footnote, the *Perez* Court noted that the WCAC had relied on appellate decisions applying the common-law "favored-work doctrine," including the *Powell* decision. *Perez, supra* at 607, n 5. The Court stated that the WCAC "did not cite any authority or offer any rationale in support of" the assertion that *Powell* survived the adoption of subsection 301(5). We do not construe this footnote as an explicit rejection of *Powell*, but merely as an indication that the WCAC did not adequately explain why it relied on *Powell* in that case.

[5] In *Russell, supra* at 586, the Court overruled a portion of the *Lee* decision. The *Russell* opinion addressed "whether an employer must pay worker's compensation benefits to a disabled employee who is terminated after ending a subsection 301(5)(a) period of unreasonable refusal." *Id.* at 580-581. While examining subsections 301(5)(a) through 301(5)(e), the Court rejected *Lee's* holding that subsection 301(5)(e) should be used to calculate the benefit rate established under subsections 301(5)(a), (b), or (c). *Russell, supra* at 586. Instead, the *Russell* Court held that subsection 301(5)(e) stands on its own, mandating payment of wage-loss benefits under certain circumstances. *Id.* at 587. There is no indication that the *Russell* Court disturbed *Lee's* determination that the *Powell* holding at issue remains good law.

section 301(5) had nullified *Powell*. A panel of this Court, including our current Chief Justice CORRIGAN, rejected the WCAC's analysis:

> The commission majority erred in suggesting that the amendments of § 301 of the statute rendered nugatory the decision in *Powell v Casco Nelmor Corp, supra*; rather, it seems that the amendments are consistent with *Powell*, albeit adding certain glosses appropriate to the legislative process, and consistent as well with other judicial decisions in the area of favored work such as *Bower v Whitehall Leather Co*, 412 Mich 172, 182 ff; 312 NW2d 640 (1981), the statute as amended specifically borrowing such concepts as "good and reasonable cause" for declining or terminating favored work.
>
> In *Powell*, the Supreme Court recognized three legal propositions, the third being that "inability to continue favored work, where that inability arises from a supervening event for which the worker is not responsible, does not create a legal bar." [*Lee, supra* at 702-703.]

Because this Court has previously ruled that the Legislature's adoption of subsection 301(5) did not nullify the *Powell* holding at issue here, the WCAC erred as a matter of law in holding otherwise. Furthermore, even in the absence of *Lee*, we would conclude that the portion of *Powell* on which plaintiff relies is consistent with the "reasonable employment" provisions contained in subsection 301(5). Plaintiff cited *Powell* for the proposition that an employee's "inability to continue favored work, where that inability arises from a supervening event for which the worker is not responsible, does not create a legal bar" to wage loss benefits. *Powell, supra* at 352. The language contained in subsections 301(5)(d) and 301(5)(e) mandates the same conclusion.

Subsections 301(5)(d) and 301(5)(e) establish specific guidelines for awarding wage-loss benefits to injured employees.[6] Subsection 301(5)(d) provides that an injured employee who accepts an employer's offer of "reasonable employment" and subsequently loses his job, "through no fault of the employee," shall receive wage-loss benefits as specified in that section. Subsection 301(5)(e) provides that an injured employee who accepts an employer's offer of "reasonable employment" and subsequently loses his job, "for whatever reason . . . shall receive compensation based upon his or her wage at the original date of injury." An employee who leaves "reasonable employment" because of a supervening medical condition that is not work-related falls within that statutory class of employees who leave employment either "through no fault of the employee" or "for whatever reason." Therefore, an employee who falls within the class of persons described in subsections 301(5)(d) and 301(5)(e) remains eligible for wage-loss benefits as provided in those subsections, despite the fact that he left work because of a supervening medical condition that was not work-related. Accordingly, the WCAC erred as a matter of law in rejecting plaintiff's argument as incompatible with the requirements of subsection 301(5) of the WDCA.

### IV. THE "REASONABLE EMPLOYMENT" DOCTRINE

We next address the WCAC's refusal to apply the WDCA's "reasonable employment" provisions to the

---

[6] Subsection 301(5)(d) applies to employees who have been engaged in "reasonable employment" for one hundred weeks or more. Subsection 301(5)(e) applies to employees who have been engaged in "reasonable employment" for less than one hundred weeks.

present case. Plaintiff argued before the magistrate and the WCAC that he was performing "reasonable employment," under specific medical restrictions, on his last day of work. Therefore, plaintiff argued that MCL 418.301(5) governed his application for benefits. The WCAC rejected plaintiff's argument that he was performing "reasonable employment" and held that subsection 301(5) was inapplicable. Because we conclude that the WCAC's decision was based on erroneous legal reasoning, we reverse. *DiBenedetto, supra* at 401-402.

The WDCA allows an employer to limit potential exposure for worker's compensation benefits by offering an injured employee "reasonable employment" within the employee's ability to perform work. MCL 418.301(5)(a). The act defines the phrase "reasonable employment" as follows:

> "Reasonable employment", as used in this section, means work that is within the employee's capacity to perform that poses no clear and proximate threat to that employee's health and safety, and that is within a reasonable distance from that employee's residence. The employee's capacity to perform shall not be limited to jobs in work suitable to his or her qualifications and training. [MCL 418.301(9).]

If the employee refuses to perform the offered "reasonable employment" without good and reasonable cause, the employee "shall be considered to have voluntarily removed himself or herself from the work force and is no longer entitled to any wage loss benefits under this act during the period of such refusal." MCL 418.301(5)(a). However, if the employee accepts the employer's offer of "reasonable employment" and subsequently loses his job, either "through no fault of the employee" or "for whatever reason," the employee

shall receive benefits as specified in subsection
301(5)(d) or subsection 301(5)(e).

At trial, the parties presented testimony from three
witnesses regarding plaintiff's job duties. It was undis-
puted that defendant did not restrict plaintiff's work
assignments to any single task before plaintiff sus-
tained the left shoulder injury. Rather, plaintiff
described his job as that of a "floater," filling in at
various positions according to defendant's needs.
Plaintiff's various production assignments changed
over time, but included working as an assembler, as a
press operator, and stacking and loading parts and
equipment. Before June 1994, plaintiff performed jobs
that required "lifting, reaching, picking up, [and]
bending over." Plaintiff performed some work at
shoulder level and some at waist level. Plaintiff rou-
tinely lifted parts weighing between ten and twenty
pounds and occasionally lifted truck doors weighing
up to thirty pounds. He sometimes performed a job in
the press room that required him to reach above
shoulder level. At other times, he stacked and loaded
parts for welders and slid doors from a waist-level
conveyor belt to a loading rack.[7]

On June 24, 1994, plaintiff fell while performing the
door-loading job, hurting his back, neck, and left
shoulder. Plaintiff underwent surgery on his left
shoulder in October 1994, and returned to work on
January 3, 1995. At that time, medical restrictions pro-
hibited plaintiff from lifting his left arm above shoul-
der height. Plaintiff testified that defendant honored
those medical restrictions, assigning him to "differ-
ent" jobs involving "very light work" upon his return

---

[7] We will refer to this position as the "door-loading job."

from the surgery to his left shoulder. Plaintiff testified that defendant placed him on jobs involving less strenuous reaching and lighter lifting requirements, including one job that plaintiff could perform using only his right arm.

Plaintiff underwent a second surgery in August 1996, involving his right shoulder. He returned to work on November 15, 1996. While plaintiff still worked as a "floater," performing a range of different jobs, plaintiff testified that defendant again placed him in positions that involved lighter work than he had performed before the left shoulder injury.[8] He testified that he worked with component parts weighing from five to ten pounds, that he was not required to lift his arms above shoulder level, and that he was not required to lift, push, or pull parts weighing more than twenty pounds with either arm.

Norman Kobylarz, defendant's disability placement specialist, confirmed that plaintiff was not subject to any medical restrictions before his workplace fall in June 1994. However, when plaintiff returned to work in January 1995, following his left shoulder surgery, he was restricted from lifting his left arm above shoulder height. According to Kobylarz, the right shoulder injury resulted in additional restrictions on plaintiff's ability to work. While the restrictions on plaintiff's left shoulder remained in place, plaintiff was also restricted from lifting, carrying, pushing, or pulling more than twenty pounds with either arm. Kobylarz stated that a number of regular jobs in plain-

---

[8] In fact, plaintiff testified that defendant often placed him in a "woman's job." That is, when a female employee failed to report for work, defendant would assign plaintiff to her position, placing small parts into boxes.

tiff's department fell within the above medical restrictions. However, he conceded that plaintiff would "probably be unable to do certain jobs" within his department.[9] Kobylarz admitted that defendant placed plaintiff in a "modified" job to accommodate his medical restrictions, and that the restrictions remained in place through plaintiff's last day of work in February 1997.

Reginald Buchanan, plaintiff's final supervisor, also acknowledged that medical restrictions due to plaintiff's shoulder injuries limited plaintiff's ability to work. Buchanan testified that he assigned plaintiff to jobs within his medical restrictions and that he never asked plaintiff to work outside those restrictions. Buchanan did not remember what job plaintiff was

---

[9] Because we find Kobylarz' testimony relevant to the "reasonable employment" issue, we include portions of that testimony here:

A. [*Kobylarz*] [W]ithin a department, he would probably be unable to do certain jobs.

Q. [*Plaintiff's Counsel*] Okay. Sir, there would be jobs there that he would not be able to do and some jobs he would be able to do?

A. [*Kobylarz*] Yes.

*     *     *

A. [*Kobylarz*] It may have narrowed the job pool, but there were jobs available within his restrictions.

*     *     *

Q. [*Magistrate*] [W]hy don't we just come right out and say it. What jobs, what departments could, could Mr. Sington work in, in this plant?

A. [*Kobylarz*] He could probably work in any of the jobs that he was—at the job qualification level that he had.

Q. [*Magistrate*] Okay.

A. [*Kobylarz*] However, within those given departments, there would still be jobs that he would be restricted from.

Q. [*Magistrate*] That's the physical restrictions.

A. [*Kobylarz*] Yes.

performing on his last day of work, and Kobylarz did not know how plaintiff had been assigned after the right shoulder surgery. However, plaintiff testified that Buchanan placed him back on the door-loading job during his last three weeks of work. Plaintiff testified that he attempted to perform that job, but discovered that it was too difficult for him and reported that fact to Buchanan. In turn, Buchanan testified that plaintiff came to him and complained of difficulties performing certain jobs. He further testified that, when he received those complaints, he tried to accommodate plaintiff by moving him to easier jobs.

The magistrate reviewed the above facts and concluded that "[p]laintiff had, all along, been performing a regular plant job—before and after his injuries." The WCAC adopted the magistrate's conclusion. Although it recognized that plaintiff's postinjury job " 'conveniently' fell within the restrictions he needed as a result of his work-related left shoulder condition," the WCAC concluded that "the job did not constitute an accommodation of his injury, so as to be 'reasonable employment' under Section 301(5)." Whether a particular job offer qualifies as "reasonable employment" is ordinarily a question of fact. *Derr v Murphy Motor Freight Lines*, 452 Mich 375, 385; 550 NW2d 759 (1996), amended 453 Mich 1204 (1996); *Pulver v Dundee Cement Co*, 445 Mich 68, 77; 515 NW2d 728 (1994). Therefore, such a determination is ordinarily reviewed under the "any evidence" standard. *Mudel, supra* at 703-704. However, where the WCAC makes factual findings premised on an erroneous understanding of the law, we review the WCAC's decision de novo. *DiBenedetto, supra* at 401-402. Because we conclude that the WCAC's decision was based on an

erroneous interpretation of the statutory phrase "reasonable employment," we reverse.

The WCAC determined that plaintiff was not performing "reasonable employment" because he continued to perform a "regular plant job" after his left shoulder injury, i.e., the floater position. To the extent that the WCAC relied on this analysis, it erred as a matter of law.

> When reviewing questions of statutory construction, our purpose is to discern and give effect to the Legislature's intent. We begin by examining the plain language of the statute. Where that language in unambiguous, we presume that the Legislature intended the meaning clearly expressed—no further judicial construction is required or permitted, and the statute must be enforced as written. We must give the words of a statute their plain and ordinary meaning, and only where the statutory language is ambiguous may we look outside the statute to ascertain the Legislature's intent. [*DiBenedetto, supra* at 402 (citations omitted).]

The WDCA's definition of the phrase "reasonable employment" is fairly straightforward. When an employee suffers a work-related injury and his employer offers him postinjury work that is within his "capacity to perform," the employer has made an offer of "reasonable employment." MCL 418.301(9). The statute does not require that an employer create a new position or a "make-work" position for an injured employee.[10] An offer of "reasonable employ-

---

[10] Compare *Butler v Dura Corp*, 105 Mich App 508, 514; 307 NW2d 83 (1981), where this Court held that an offer of "favored work" includes "any job regularly performed by other employees, as long as the claimant could not perform according to his prior skills. Moreover, a job need not be manufactured (i.e., be an 'odd-lot' job) for the claimant's particular incapacity in order to be favored work." [Citations omitted.]

ment" may include an offer to perform a "regular" position, as long as that position involves "work that is within the employee's capacity to perform that poses no clear and proximate threat to that employee's health and safety." MCL 418.301(9). Thus, the fact that plaintiff continued to perform a "regular plant job," i.e., the floater position, does not mandate a conclusion that he was not engaged in "reasonable employment."[11]

After his shoulder surgeries, plaintiff apparently continued to perform *some* of the job duties that he performed before his workplace fall. For example, he performed the door-loading job both before and after his work-related injury. However, it is clear that plaintiff did not perform *all* his preinjury job duties. Defendant's witnesses admitted that plaintiff was placed in a "modified" job to accommodate his medical restrictions and testified that there were some jobs within plaintiff's department that plaintiff could no longer perform. We conclude that the WCAC erroneously focused on the job duties plaintiff remained able to perform, rather than the jobs duties that plaintiff's work-related injury rendered him unable to perform.[12] The statute does not restrict "reasonable employ-

---

[11] Compare appellate decisions considering the meaning of an offer of "favored work." In *Michales v Morton Salt Co*, 450 Mich 479, 487; 538 NW2d 11 (1995), the Court stated that "[f]avored work entails the modification of an employee's duties that in some manner accommodates the employee's injury." Similarly, in *Bower, supra* at 182, the Court described "favored work" as "less strenuous post-injury work." Finally, in *Jones v Auto Specialties Mfg Co*, 177 Mich App 59, 64; 441 NW2d 1 (1988), this Court held that the term "favored work" includes work offered by the employer to a disabled employee "which accommodates the employee's limitations."

[12] Compare our Supreme Court's analysis of the term "disability." In *Haske, supra* at 651, the Court held that "an employee is disabled whenever he is rendered unable to perform a single job within the category of

ment" to job duties that are completely different from the employee's preinjury duties. Rather, the statutory language includes within its scope those situations where an employee is able to perform some of his preinjury tasks, but it unable to perform all of them. Because the undisputed testimony established that plaintiff could not perform certain job duties within his department and that defendant accommodated plaintiff's medical restrictions by assigning him to less strenuous duties, we conclude as a matter of law that defendant offered plaintiff "reasonable employment" within the meaning of subsection 301(9) of the WDAC. Therefore, subsection 301(5) of the WDAC applies to plaintiff's application for benefits.

V. *HASKE* COMPENSABLE DISABILITY DOCTRINE

Finally, we must address the WCAC's application of *Haske* to the present case. The magistrate acknowledged that plaintiff suffered a work-related injury to his left shoulder. Nevertheless, the magistrate ruled that plaintiff was not entitled to worker's compensation benefits because he had not established a compensable disability under *Haske*. The WCAC affirmed the magistrate's decision, holding that plaintiff's left shoulder injury did not result in a compensable disability because plaintiff returned to full employment after that injury. As set forth above, it is clear that defendant offered plaintiff "reasonable employment" within the meaning of subsection 301(9). Therefore, we must determine whether the *Haske* doctrine applies to those employees performing "reasonable

---

jobs he is suited to perform, even if the number he continues to be able to perform is numerous and equally well paying."

employment" under subsection 301(5). We conclude that it does not.

In *Haske, supra* at 654, our Supreme Court held that a work-related injury is not compensable unless the plaintiff also establishes a reduction in earning capacity. *Id.* In order to establish a reduction in wage-earning capacity, the plaintiff must prove: (1) a work-related injury, (2) a subsequent loss in actual wages, and (3) that the injury caused the subsequent wage loss. *Id.* at 662. The *Haske* Court summarized its holding as follows:

> We hold that an employee proves a disability where he proves that he can no longer perform a job suitable to his qualifications and training as a result of his injury. An employee's disability is compensable only where he proves wage loss by showing a reduction in earning capacity. An employee establishes a reduction in earning capacity where he establishes to the factfinder's satisfaction that a reduction or elimination of his wages, subsequent to the work-related injury, is causally linked to the work-related injury. [*Id.* at 665.]

In the present case, the magistrate and the WCAC concluded that plaintiff left work because of his stroke, not because of his left shoulder injury. Therefore, the magistrate and the WCAC held that plaintiff's reduction in wage-earning capacity was not causally linked to his work-related injury. Applying *Haske*, the magistrate and the WCAC concluded that plaintiff's disability was not compensable. We conclude that the WCAC erroneously applied the *Haske* doctrine to the present case because that analysis ignores the WDCA's "reasonable employment" provisions.

When an injured employee accepts an offer of "reasonable employment," subsection 301(5) requires that

"entitlement to weekly wage loss benefits shall be determined pursuant to this section." The statute then sets forth specific formulas for determining the benefit rate that must be paid to the injured worker. Application of the *Haske* compensable disability doctrine to injured employees who were engaged in "reasonable employment" would render subsection 301(5) meaningless. The statute provides that injured workers engaged in "reasonable employment" shall receive benefits even if they cease working either "through no fault of the employee" or "for whatever reason." MCL 418.301(5)(d), (e). An injured worker engaged in "reasonable employment" need not prove that he lost his job for reasons directly related to his injury. Therefore, once an employee accepts and begins to perform "reasonable employment," the specific provisions found in § 301(5)(e) take precedence over *Haske's* general requirement that the wage loss must be causally linked to the work-related injury.

### VI. CONCLUSION

In summary, we hold that the WCAC erred as a matter of law in holding that the Legislature's adoption of subsection 301(5) nullified *Powell.* The portion of *Powell* on which plaintiff relies is consistent with the "reasonable employment" provisions of subsection 301(5). Further, the WCAC erroneously concluded that plaintiff was not performing "reasonable employment" on his last day of work. The fact that an injured employee returns to work in a "regular" position does not mandate the conclusion that he was not engaged in "reasonable employment." The WCAC should not focus on the job duties that the injured employee remains able to perform after his injury. Rather, the

WCAC should examine the duties that the employee's work-related injury rendered him unable to perform. Finally, the WCAC erroneously applied *Haske* to the present case. Injured employees engaged in "reasonable employment" who subsequently lose their jobs are not required to prove that the job loss was causally connected to the work-related injury.

We therefore reverse and remand to the WCAC for further proceedings consistent with this opinion, including a determination whether plaintiff's case is governed by subsection 301(5)(d) or subsection 301(5)(e).[13] We do not retain jurisdiction.

---

[13] Neither the magistrate nor the WCAC made factual findings regarding the number of days plaintiff worked after returning from left shoulder surgery.