SWEATT v DEPARTMENT OF CORRECTIONS

Docket No. 226194. Submitted March 7, 2001, at Lansing. Decided September 25, 2001, at 9:10 A.M. Leave to appeal sought.

Ronald G. Sweatt, a corrections officer, was injured in a work-related accident and received worker's compensation benefits from the Department of Corrections (DOC) until he was incarcerated as a result of a drug conviction. The benefits were then terminated pursuant to MCL 418.361(1). Sweatt sought the reinstatement of benefits following his release from prison. The DOC denied the petition on the basis of MCL 791.205a, which became effective while Sweatt was imprisoned and, with certain exceptions, prohibits the DOC from hiring felons. The DOC claimed that § 205a prevented it from offering Sweatt reasonable employment and thereby mitigating its liability under MCL 418.301(5)(a). A worker's compensation magistrate disagreed and awarded Sweatt an open award of benefits. The Worker's Compensation Appellate Commission (WCAC) agreed with the magistrate and affirmed the award. The DOC appealed by leave granted.

In separate opinions by NEFF, J., and WHITE, J., the Court of Appeals *held*:

The decision of the WCAC must be affirmed.

NEFF, J., in the lead opinion, stated that Sweatt is entitled to the reinstatement of his benefits on the basis of his continued disability. No provision of the worker's compensation act provides for the permanent forfeiture of benefits because of imprisonment or commission of a crime. Sweatt cannot be said to be unable to obtain or perform work for these reasons and therefore is no longer ineligible for benefits under subsection 361(1). There is no statutory basis for considering the DOC's reason for failing to offer reasonable employment. Subsection 301(5)(a) is inapplicable here because it comes into play only if the employee receives a bona fide offer of reasonable employment. The fact that the DOC cannot rehire Sweatt does not make him ineligible for benefits under subsection 361(1). The test for application of subsection 361(1) is not whether an employee is unable to work for the previous employer, but rather whether the employee is unable to obtain or perform work because of the commission of a crime. Sweatt is not unable to obtain or

perform work for that reason. The statute regarding the DOC's inability to hire felons and the worker's compensation act are unrelated and should not be read in pari materia.

WHITE, J., concurring, stated that regardless of whether the view of Judge NEFF or the view in the dissenting opinion of Judge GRIFFIN regarding the interrelationship of § 205a and subsection 361(1) is accepted, the decision of the WCAC must be affirmed. There was no error of reasoning where the WCAC rejected the concept of an absolute disqualification of benefits without regard to whether the DOC was in fact deprived of the mitigation defense offered by subsection 301(5)(a) regarding the offer of reasonable employment.

Affirmed.

GRIFFIN, P.J., dissenting, stated that the combined effect of the interrelated statutes, subsection 361(1) and § 205a, require that the decision of the WCAC should be reversed. There is no statutory basis for the WCAC's imposition of the burden of proof on the DOC to establish that, but for the prohibition of § 205a, the DOC would have offered Sweatt reasonable employment. Here, it is Sweatt's commission of a felony that prevents the DOC from mitigating its worker's compensation liability. The causal connection between Sweatt's original injury and the liability of the DOC has been broken by the conviction that bars the DOC from rehiring Sweatt. The break in the chain of causation occurs as a matter of a law, not as a matter of fact. Under subsection 361(1), Sweatt, not the DOC, must suffer the consequences of his misconduct. Sweatt is unable to obtain or perform work because of his commission of a crime; therefore, as a matter of law, subsection 361(1) provides that the DOC does not owe benefits to Sweatt.

*Kelman, Loria, Will, Harvey & Thompson* (by *James P. Harvey*), for Ronald G. Sweatt.

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, and *George H. Weller* and *Charles Jones*, Assistant Attorneys General, for the Department of Corrections.

Before: GRIFFIN, P.J., and NEFF and WHITE, JJ.

NEFF, J. In this worker's compensation case, we must decide whether a provision of the statutory scheme governing the operation of defendant Depart-

ment of Corrections (DOC), MCL 791.205a, relieves defendant of its responsibility as an employer to pay disability benefits to plaintiff under the Worker's Disability Compensation Act (WDCA), MCL 418.101 *et seq.* I conclude that defendant is not relieved of its responsibility to pay benefits under the WDCA and so affirm the majority decision of the Worker's Compensation Appellate Commission (WCAC), affirming en banc the magistrate's open award of benefits, although for reasons different from those relied on by the WCAC.

I

The facts concerning plaintiff's injury and disability are uncontroverted. Plaintiff was working as a corrections officer and was injured while attempting to physically separate and restrain inmates involved in a fight. The injury required that surgery be performed on his right knee. At the time of the trial of this matter, November 18, 1998, the parties stipulated that plaintiff continued to be disabled as a result of the work-related injury incurred on December 8, 1989.

At the time of plaintiff's injury, defendant maintained a policy that precluded a return to work of any employee who was not one hundred percent fit for duty as a corrections officer. In other words, there was no light duty or "favored work"[1] available for injured corrections officers who were not fully recovered from their injuries.

---

[1] In 1981, the Legislature codified the judicially created favored work doctrine. *McJunkin v Cellasto Plastic Corp*, 461 Mich 590, 595; 608 NW2d 57 (2000). See 1981 PA 199, 1981 PA 200. Favored work is more properly referenced as "reasonable employment" under the statute, MCL 418.301(5)(a). *Perez v Keeler Brass Co*, 461 Mich 602, 604; 608 NW2d 45 (2000).

Worker's compensation benefits were voluntarily paid until January 12, 1995, when plaintiff was incarcerated as a result of a drug conviction. On the authority of MCL 418.361(1), payment of benefits was suspended while plaintiff was incarcerated. At about the same time, defendant rescinded its one hundred percent fit-for-duty policy and began to offer light duty or favored work to injured corrections officers who were not fully fit to return to work as corrections officers. Plaintiff was never offered work by defendant after this change in policy.

During his incarceration and after his parole on June 1, 1996, plaintiff worked at various jobs that accommodated his injury-related limitations on stair climbing, standing, and lifting. All indications in the record suggest that plaintiff was a willing and able worker within his limitations. When plaintiff was released from prison, the statutory prohibition of § 361 no longer applied, that is, under the WDCA plaintiff was again entitled to disability benefits.

Effective March 25, 1996, the Legislature amended the DOC statute to prohibit defendant from hiring felons. MCL 791.205a. The statute specifically provides:

> (1) Beginning on the effective date of this section, an individual who has been convicted of a felony, or who is subject to any pending felony charges, shall not be employed by or appointed to a position in the department.

> \*     \*     \*

> (3) This section does not apply to a person employed by or appointed to a position in the department before the effective date of this section.

Plaintiff's petition for reinstatement of benefits, after the § 361 bar was lifted on his release from prison, was denied by defendant on the basis of the DOC statutory amendment, and the petition went to trial before the magistrate, who granted an open award of benefits on the basis of an ongoing right knee disability.

Defendant appealed to the WCAC, which heard the matter en banc and remanded it to the magistrate for an additional finding of fact concerning an offer of reasonable employment. The magistrate filed an opinion on remand, and the case returned to the WCAC, where defendant claimed that it should be relieved from further worker's compensation liability because of plaintiff's criminal conduct. A four-member majority of the WCAC, sitting again en banc, disagreed with defendant and affirmed the magistrate's award. Defendant appeals the decision of the WCAC by leave granted.

II

Where facts are not in dispute and statutory construction is the only question for appellate review, the standard of review is de novo. *Ramon Perez v Keeler Brass Co*, 461 Mich 602, 608; 608 NW2d 45 (2000).

III

Recent decisions of our Supreme Court acknowledge that permanent forfeiture of disability benefits payable under the WDCA is contrary to legislative intent where the statutory provision at issue references a "period" of time. For instance, where an employee refuses an offer of reasonable employment,

the WDCA operates to suspend disability benefits, MCL 418.301(5)(a):

> If an employee receives a bona fide offer of reasonable employment from the previous employer, another employer, or through the Michigan employment security commission and the employee refuses that employment without good and reasonable cause, the employee shall be considered to have voluntarily removed himself or herself from the work force and is no longer entitled to any wage loss benefits under this act during the period of such refusal.

Benefits may be suspended only during the period of refusal. *Russell v Whirlpool Financial Corp*, 461 Mich 579, 586-587; 608 NW2d 52 (2000). At the point the employee ends the refusal, benefits must be reinstated. *Id.* at 587-588. This is so even if the employee is terminated for "just cause," but has been employed in favored work for less than one hundred weeks. *Id.* at 581, 586. Likewise, where the employee ends a period of unreasonable refusal of reasonable employment, and the employer reneges on its earlier offer of reasonable work, disability benefits must be reinstated. *McJunkin v Cellasto Plastic Corp*, 461 Mich 590, 592, 599-600; 608 NW2d 57 (2000). As pointed out in *McJunkin*, the WDCA does not provide for *permanent* forfeiture of benefits as a result of unreasonably refusing an offer of reasonable employment. *Id.* at 598; see also *Ramon Perez, supra* at 611.

In *Russell, McJunkin,* and *Ramon Perez,* the Supreme Court determined that the statutory language "during the period of such refusal" indicated a time of limited duration, reflecting a temporary suspension of benefits, which the employee could end at any time in the future. *Ramon Perez, supra* at 613-614; *McJunkin, supra* at 597-598; *Russell, supra* at

587-588. The Supreme Court emphasized that in determining whether benefits forfeited by a refusal to accept reasonable employment are to be reinstated, the focus is on the actions of the employee, as evidenced by the language in subsection 301(5)(a). *Ramon Perez, supra* at 613-614; *McJunkin, supra* at 597; *Russell, supra* at 587-588. While those three cases interpreted a section of the WDCA different than the one at issue here, their reasoning is instructive and applicable to the issues in this case.

A

The WDCA provides for suspension of disability benefits when the employee is unable to obtain or perform work because of imprisonment or commission of a crime:

> [A]n employer shall not be liable for compensation under section 351, 371(1), or this subsection for such periods of time that the employee is unable to obtain or perform work because of imprisonment or commission of a crime. [MCL 418.361(1).]

There is no provision in § 361 or elsewhere in the WDCA for the permanent forfeiture of benefits because of imprisonment or commission of a crime, and plaintiff in this case cannot be said to be unable to obtain or perform work for these reasons.[2] As pointed out by the WCAC majority opinion, "plaintiff did not refuse employment, nor can his actions in committing a

---

[2] In addition to his employment during incarceration and parole, plaintiff was employed at the time of the hearing on his petition for reinstatement of disability benefits, but was earning less than his preinjury wage. He had performed light factory work and had delivered newspapers until he could no longer do so within his physical limitations.

crime be viewed generally as a decision to withdraw from the workplace for those periods after he had served the appropriate amount of time in prison as punishment for his criminal misconduct." In other words, it was plaintiff's behavior that led to the suspension of his benefits, but plaintiff did everything necessary under the WDCA to restore his entitlement to benefits. Therefore, focusing on the conduct of plaintiff, and the statutory language referencing a period of limited duration, as *Russell, McJunkin,* and *Ramon Perez* instruct, it is clear that under the WDCA plaintiff is entitled to reinstatement of disability payments on the basis of his continued disability.

I assume solely for purposes of analysis that MCL 791.205a prevents defendant from hiring plaintiff,[3] without reference to the availability within defendant of reasonable employment or the resumption of disability payments where there is no available reasonable employment: in other words, without reference to or recognition of the provisions of the WDCA. The argument is that the DOC statute operates to render reasonable employment unavailable to plaintiff, again, without reference to the WDCA.[4] Defendant would

---

[3] The parties seem to agree, and the WCAC specifically found, that after his injury plaintiff was no longer employed by defendant, and thus, MCL 791.205a(3) does not come into play. However, I would question this result in light of the fact that plaintiff's injury stems from employment that predates the effective date of MCL 791.205a, and subsection 5a(3) provides that the DOC statute "does not apply to a person employed by [defendant] before the effective date of this section."

[4] It is worth noting that if defendant's earlier policy of precluding return to duty of any injured corrections officer who was not one hundred percent fit for duty had remained in effect, i.e., no reasonable employment could be offered to any injured employee who could not return to full duty, plaintiff would have been entitled to resumption of disability benefits because of his continuing disability notwithstanding the provisions of MCL 791.205a(1).

apply this statutory provision to permanently deprive plaintiff of benefits otherwise payable under the WDCA. The WCAC disagreed, as do I, although for different reasons.

B

The WCAC decided this case on the narrow factual ground that defendant failed to prove that it would have offered plaintiff reasonable employment but for the statutory bar of MCL 791.205a(1). The WCAC accurately characterizes the record below: defendant presented the testimony of its return-to-work specialist, who explained the criteria for finding reasonable employment for injured corrections officers who could not return to full duty. The specialist testified that she did not make an offer of reasonable employment to plaintiff and did not know of any other offer to him from the department. However, subsection 301(5)(a), which suspends benefits for unreasonable refusal to accept reasonable employment, by its express language, comes into play only "*[i]f* an employee *receives* a bona fide offer of reasonable employment . . . ." (Emphasis added.) There is no statutory basis for considering defendant's reason *for failing to offer* reasonable employment. Because the WCAC's decision is premised on a finding that plaintiff *did not receive* an offer of reasonable employment, subsection 301(5)(a) is inapplicable.

While the WCAC's reasoning is based on an accurate reading of the record, I find it does not address the question that is presented by and really at the heart of this case. That is, does the provision of the DOC statute barring the department from hiring anyone convicted of a felony or subject to pending felony

charges, serve to relieve the department of its responsibility to pay disability benefits under the WDCA and to thereby nullify the clear legislative intent of the WDCA to eschew permanent forfeiture of disability benefits. This is a question of law, and I conclude that defendant is not relieved of its responsibility to pay benefits. Thus, I reach the same result reached by the WCAC, but for different reasons. *Zimmerman v Owens*, 221 Mich App 259, 264; 561 NW2d 475 (1997).

C

The primary goal of judicial interpretation of a statute is to ascertain and give effect to the intent of the Legislature. *Frankenmuth Mut Ins Co v Marlette Homes, Inc*, 456 Mich 511, 515; 573 NW2d 611 (1998). " '[N]othing will be read into a statute that is not within the manifest intent of the Legislature as gathered from the act itself.' " *McJunkin, supra* at 598, quoting *In re S R*, 229 Mich App 310, 314; 581 NW2d 291 (1998). When faced with questions of statutory construction, this Court's task is to give effect to the Legislature's intent. *Nawrocki v Macomb Co Rd Comm*, 463 Mich 143, 159; 615 NW2d 702 (2000). However, where the plain and ordinary meaning of the language is clear, judicial construction is normally neither required nor permitted. *Cherry Growers, Inc v Agricultural Marketing & Bargaining Bd*, 240 Mich App 153, 166; 610 NW2d 613 (2000).

The WDCA provides for suspension of disability benefits "for such periods of time that the employee is unable to obtain or perform work because of imprisonment or commission of a crime." MCL 418.361(1). Under the express language of subsection 361(1), plaintiff's disability benefits are suspended only dur-

ing the period that he is "unable to obtain or perform work . . . ." When plaintiff sought reinstatement of his benefits following his release from incarceration, he could work, and had, in fact, been working within his limitations.

Plaintiff remains disabled, he is no longer disqualified from receiving benefits by reason of § 361, and there was no offer of reasonable employment to bring the provisions of subsection 301(5)(a) into consideration. He is entitled to benefits under the WDCA.

IV

The dissent, *post* at 581, reasons that no benefits are owed "[b]ecause, *as a matter of law*, plaintiff is unable to work for defendant because of his commission of a felony, MCL 791.205a" under the plain language of subsection 361(1). Even if the DOC statute applied to bar plaintiff's employment with defendant, I could not concur with this result. There is no basis in subsection 361(1) for such specific application to defendant, and I will not read such language into the statute. See *McJunkin, supra* at 598. The fact that *defendant* cannot rehire plaintiff does not render plaintiff ineligible for benefits under the language of subsection 361(1). The test is not whether an employee is unable to work for the previous employer, but rather merely whether "the employee *is unable to obtain or perform work* because of . . . commission of a crime." The record is clear that plaintiff is not unable to obtain or perform work for that reason.

My colleague's lengthy dissent for reversal gets the underlying legal principles right, but the analysis is

fatally flawed. The foundation of the dissent's reasoning is an unsupported premise that the DOC statute and the worker's compensation act are interrelated statutes and therefore must be read in pari materia. The requirements for applying the principle of in pari materia are not met because the DOC statute and the worker's compensation act do not " 'relate to · the same person or thing, or the same class of persons or things, or . . . have a common purpose.' " *State Treasurer v Schuster*, 456 Mich 408, 417; 572 NW2d 628 (1998), quoting *Detroit v Michigan Bell Telephone Co*, 374 Mich 543, 558; 132 NW2d 660 (1965).

The worker's compensation act is a self-contained legislative scheme. *Perez v State Farm Mut Automobile Ins Co*, 418 Mich 634, 649; 344 NW2d 773 (1984). The purpose of the worker's compensation act is to compensate a claimant for lost earning capacity caused by a work-related injury, under a comprehensive scheme that balances the employer's and the employee's interests. *Eversman v Concrete Cutting & Breaking*, 463 Mich 86, 92-93; 614 NW2d 862 (2000); *Ramon Perez, supra* at 610-611; *Mattison v Pontiac Osteopathic Hosp*, 242 Mich App 664, 672; 620 NW2d 313 (2000). An injured employee is eligible for compensation regardless of whether the employer was at fault, and, in return, the employer is immunized from tort liability. *Eversman, supra; Simkins v General Motors Corp (After Remand)*, 453 Mich 703, 711; 556 NW2d 839 (1996). The DOC statute is an unrelated act governing the establishment and operation of the corrections department. MCL 791.201. The purpose of MCL 791.205a, enacted in 1996, is to promote security in the prisons by prohibiting the DOC from hiring convicted felons. 1996 PA 140; House Legislative Analy-

sis, HB 4398, October 10, 1996.[5] It regulates the prisons and prison employees. These statutes are wholly unrelated, and there is no basis for reading them in pari materia.

Further, in my view, the legislative history cited by the dissent supports affirmance of the appellate commission's decision, not reversal. Clearly, the legislative intent was to bar compensation in those situations where the claimant was removed from the work force, which does not apply to plaintiff because he reentered the work force following his release from incarceration. I cannot agree that plaintiff is subject to a permanent deprivation of compensation for a temporary removal from the workforce, which would be contrary to the Supreme Court's recent explicit pronouncements that the worker's compensation act does not favor a permanent forfeiture of benefits. *Ramon Perez, supra* at 611; *McJunkin, supra* at 598. In *Ramon Perez, supra* at 614, the Supreme Court recognized that, after an injury, "reasonable employment" job offers may come from various sources, and "[t]he fact that one particular job disappears says nothing about the employee's decision to withdraw from the work force."

The dissent's concern that this decision allows, by extension, an imprisoned individual to collect worker's compensation if the individual is able to obtain employment during incarceration, i.e., work release, is unfounded. This speculation is far beyond

---

[5] According to the bill analysis, the problem addressed by this statute is the high number of corrections officers who have records of felony convictions: of ninety individuals with felony convictions employed by the DOC, sixty are corrections officers. Those advocating the statutory amendment believed this number to be too high. House Legislative Analysis, HB 4398, October 10, 1996.

the context of this case, and I reject the dissent's initial assumption that a prisoner who participates in work release is necessarily able to obtain or perform work within the statutory definition, thus avoiding the bar of subsection 361(1).

By enacting subsection 361(1), Michigan joined a minority of other states that disallowed worker's compensation benefits to incarcerated claimants. Anno: *Workers' compensation: Incarceration as terminating benefits*, 54 ALR4th 241, § 2[a]. My search disclosed no authority discussing statutory language in other states comparable to that at issue here, i.e., disallowing benefits where a claimant is unable to obtain or perform work because of commission of a crime. The dissent, *post* at 577, concludes that my decision renders the "commission of a crime" language a nullity because no person convicted of a crime would be prevented "from obtaining work from *all* employers." In fact, the "commission of a crime" language has apparently been applied to unique circumstances where a worker pleaded guilty of a crime, but fled the jurisdiction before sentencing. The claimant's attorney argued that the claimant was not barred from benefits under subsection 361(1) because the claimant had not been imprisoned. The WCAC held that the claimant was presently unable to obtain or perform work within the meaning and intent of subsection 361(1). Welch, Worker's Compensation in Michigan: Law & Practice (4th ed), § 10.3, p 10-4, citing *Tanney v Advance Sheet Metal, Inc*, 1992 Mich ACO 14; 4 MIWCLR 1287 (1992). This circumstance alone, albeit narrow, justifies the "commission of a crime" language.

The dissent, *post* at 579, asserts that the statutory language is intended to deny benefits in plaintiff's case because the causal connection between his original work injury and defendant's liability has been broken, as in situations involving "discharge for good cause, voluntary retirement, or accident or illness unrelated to the worker's disability."[6] I find no authority supporting this view, and the dissent cites none.

Finally, the interpretation of the dissent, favoring defendant, is not in keeping with the underlying policies of the WDCA. "[T]he act was designed to be remedial and must not be unnecessarily construed so as to favor a denial of benefits. *Nederhood v Cadillac Malleable Iron Co*, 445 Mich 234, 247; 518 NW2d 390 (1994) (opinion by BRICKLEY, J). With all due respect, I find the dissent's reasoning and conclusions unpersuasive.

V

Even were I to find judicial construction of the statutory language in subsection 361(1) necessary, I am constrained to reach the same conclusion as above. The rules of statutory interpretation require that provisions be read in the context of the entire statute so as to produce an harmonious whole. *Weems v Chrysler Corp*, 448 Mich 679, 699-700; 533 NW2d 287 (1995). The Legislature's 1981 amendment of the worker's compensation statute, see 1981 PA 199, 1981 PA 200, gives defendant the benefit of mitigation of

---

[6] In fact, worker's compensation benefits are not necessarily denied in these situations. See, e.g., *Russell, supra* at 588-589 (benefit availability continues even where an employee discharged for just cause has been employed pursuant to subsection 301[5] for less than one hundred weeks).

its compensation liability through any employment source: plaintiff is obligated to accept an offer of reasonable employment from defendant, another employer, or the Michigan Employment Security Commission. MCL 418.301(5)(a); *McJunkin, supra* at 595-596. It follows that the Legislature similarly intended that compensation be suspended where a claimant could not obtain or perform work from any source, as expressed by the broad language "unable to obtain or perform work" because of the commission of a crime. The inclusion of the phrase "to obtain . . . work" belies any legislative intent that subsection 361(1) hinges merely on a return to employment with the previous employer.

Affirmed.

White, J. *(concurring).* The rationale of defendant Department of Corrections (DOC) and the dissent is that plaintiff's commission of a felony has made it impossible for defendant, which is subject to the strictures of MCL 791.205a, to mitigate its damages and offer reasonable employment under subsection 301(5)(a) of the Worker's Disability Compensation Act (WDCA), MCL 418.301(5)(a), and therefore subsection 361(1) of the WDCA, MCL 418.361(1), applies. The Worker's Compensation Appellate Commission (WCAC) accepted this rationale in the abstract, but concluded that the magistrate had not erred in concluding that there was insufficient factual support for the underlying premise that were it not for plaintiff's status as a convicted felon, defendant would have offered reasonable employment to plaintiff. The WCAC dissenters and the dissent here view that approach as illogical and subjecting defendant to a "Catch-22." I disagree.

The WCAC majority did not conclude that defendant must actually offer the prohibited employment. Rather, it determined that in any given case, in order for the DOC statutory bar on employing felons to render WDCA subsection 361(1) applicable, there must be a factual finding that the DOC bar actually prevented the DOC from offering reasonable employment, i.e., that the DOC in fact had an open position constituting reasonable employment that plaintiff could have performed, and that it would have offered such employment had the bar not been in effect. Stated differently, the WCAC majority rejected the concept of an absolute disqualification of benefits without regard to whether the DOC was in fact deprived of the mitigation defense offered by WDCA subsection 301(5)(a), pertaining to the offer of reasonable employment. I find no error in this reasoning.

Accordingly, regardless of whether the lead opinion's or the dissenting opinion's view of the interrelationship of MCL 791.205a and MCL 418.361(1) is accepted, I conclude that the decision of the WCAC should be affirmed.

GRIFFIN, P.J. (*dissenting*). I respectfully dissent. In my view, my colleagues have ignored the plain meaning and combined effect of the interrelated statutes, MCL 418.361(1) and MCL 791.205a. I would reverse.

Plaintiff is a former corrections officer who sustained a work-related injury while employed by defendant. Thereafter, plaintiff received worker's compensation benefits until he was incarcerated on January 12, 1995, for a conviction of delivery of heroin. Following his release from prison, but while still on parole, plaintiff filed a petition seeking reinstatement of his worker's compensation benefits. At the time of

the hearing on plaintiff's petition, defendant's representative conceded, "Mr. Sweatt could still not do the type of correction officer work that he was doing before he was injured."

Defendant argued to the worker's compensation magistrate, and later to the en banc Worker's Compensation Appellate Commission (WCAC), that it was not liable for reinstatement of plaintiff's worker's compensation benefits by operation of the combined effect of two statutes. Specifically, MCL 418.361(1) of the worker's compensation act provides, in relevant part:

> [A]n employer shall not be liable for compensation under section 351 [total incapacity], 371(1) [weekly loss of wages], or this subsection [partial incapacity], for such periods of time that the employee is unable to obtain or perform work because of imprisonment *or commission of a crime.* [Emphasis added.]

Further, MCL 791.205a forbids the hiring of felons, such as plaintiff, by the Department of Corrections:

> (1) Beginning on the effective date of this section [March 25, 1996], an individual who has been convicted of a felony, or who is subject to any pending felony charges, shall not be employed by or appointed to a position in the department [of corrections].
>
>       *    *    *
>
> (3) This section does not apply to a person employed by or appointed to a position in the department before the effective date of this section.

At trial, a disability management coordinator for defendant testified that persons with partial disabilities, such as plaintiff, would normally be returned to

favored work. However, there was no effort to return plaintiff to favored work because "[h]e's on parole, and he has been convicted of a felony, and there is a State law that prohibits [the] Department of Corrections from hiring individuals who have been convicted of felonies."

At trial, defendant sought to admit into evidence documents establishing that plaintiff's employment with defendant was terminated following his felony conviction. In addressing the magistrate's ruling excluding these documents, the WCAC made a finding of fact that plaintiff's employment with defendant was terminated before the effective date of MCL 791.205a:

> We believe that the documents at issue are not of critical evidentiary importance for the disposition of this case. By seeking to introduce these proofs, defendant is trying to establish that Mr. Sweatt was not employed by the Department of Corrections after November 19, 1991, thereby making the primary prohibition against the hiring of ex-felons (subsection (1) of MCL 791.205a) applicable to plaintiff. Because we conclude, based on the trial record, that plaintiff was not employed by the Department of Corrections at the time MCL 791.205a went into effect and that MCL 791.205a therefore effectively prohibits the Department of Corrections from re-hiring plaintiff because he is an ex-felon, the question of the introduction of these proofs becomes irrelevant.

The WCAC dissenters agreed with the majority in regard to this finding:

> We adopt the conclusion of the four-person majority in this matter that plaintiff was not employed by the Department of Corrections at the time MCL 791.205a, the ex-felon statute, went into effect for the reasons set forth in the controlling opinion.

On appeal, plaintiff does not contest the unanimous WCAC conclusion regarding his employment status as of the effective date of MCL 791.205a.

On remand from the WCAC, the magistrate awarded worker's compensation benefits on the basis that "I find no evidence to support a finding that the State of Michigan would have made an offer of reasonable employment to plaintiff but for the statutory prohibition." Sitting en banc, the WCAC affirmed in a four-to-three decision. First, the majority agreed

> with defendant's theoretical legal effort to link the prohibition on the hiring of ex-felons in MCL 791.205a to Section MCL 418.361(1). Under the right factual circumstances, the former provision can indeed operate to relieve the Department of Corrections from liability by operation of the "commission of a crime" language in Section 361(1).

However, the WCAC held:

> Linkage of the two statutory provisions [MCL 418.361(1) and MCL 791.205a] requires a critical additional finding of fact. The question of whether an employee is unable to obtain or perform work because of the *commission of a crime* is a question of fact. In order for the Department to avoid payment of compensation under Section 361(1), it must prove, as a matter of fact, that were it not for the statutory prohibition on hiring an ex-felon, it would have made an offer of reasonable employment to plaintiff. [Emphasis in original.]

Although defendant did not argue that plaintiff's claim was barred because of plaintiff's failure to accept reasonable employment, the WCAC majority concluded that plaintiff's petition must be granted because defendant did not sustain its burden of proving that *but for the statutory prohibition* preventing

defendant from hiring plaintiff, defendant would have offered reasonable employment to plaintiff.

The three dissenting members of the WCAC rejected the convoluted logic of the majority:

> [T]he majority proceeds to place an artificially-created burden on defendant to prove it would have done the very thing the ex-felon statute prohibits defendant from doing, namely, offering employment to an ex-felon. The majority believes that in order for defendant to link Section 361(1) with the ex-felon statute, it must first prove, as a matter of fact, that but for the ex-felon statute it would have made an offer of reasonable employment to plaintiff. We disagree and find such action is neither legally required nor reasonable. In effect, the majority subjects defendant to a proverbial "Catch 22" situation, ostensibly overlooking the overriding and clear application of the ex-felon statute and exacting from defendant what the statute prohibits.

Defendant appeals to this Court by leave granted. Judge NEFF and I agree that the rationale relied on by the WCAC majority was erroneous. The new evidentiary burden of proof and production created and imposed on defendant to establish that, but for a statutory prohibition, defendant would have offered plaintiff reasonable employment is without a statutory basis. However, the reasoning of Judge NEFF is similarly flawed.

In affirming the WCAC's decision, the lead opinion rejects the rationale of the WCAC but nevertheless affirms on different grounds. Judge NEFF reasons as follows:

> When plaintiff sought reinstatement of his benefits following his release from incarceration, he could work, and had, in fact, been working within his limitations. *Ante*, at 565.

Judge Neff also stated:

> The test [under MCL 418.361(1)] is not whether an employee is unable to work for the previous employer, but rather merely whether "the employee *is unable to obtain or perform work* because of . . . commission of a crime." The record is clear that plaintiff is not unable to obtain or perform work for that reason. [Opinion by Neff, J., *ante* at 565 (emphasis in original).]

As previously noted, subsection 361(1) excludes an employer from liability for worker's compensation benefits for such periods that the employee is unable to obtain or perform work because of *imprisonment or commission of a crime.* Judge Neff is correct that the record is clear that following plaintiff's release from imprisonment, he could obtain and perform favored work and in fact did so. However, the record is clear that during his imprisonment plaintiff was also able to obtain and perform favored work. In this regard, the lead opinion acknowledges the following:

> During his incarceration and after his parole on June 1, 1996, plaintiff worked at various jobs that accommodated his injury-related limitations on stair climbing, standing, and lifting. All indications in the record suggest that plaintiff was a willing and able worker within his limitations. When plaintiff was released from prison, the statutory prohibition of § 361 no longer applied, that is, under the WDCA plaintiff was again entitled to disability benefits. [Opinion by Neff, J., *ante* at 558.]

In his brief, plaintiff admits working pursuant to a work-release program while in prison:

> During his incarceration, plaintiff was employed by Miller Industries as part of a work release program in a job that required him to handle only eight-ounce parts . . . . He held

that job from May of 1995 until July of 1996, after his actual
release . . . . At that time, he entered rehabilitation for 90
days after an overdose, and was told that his job would be
held for him . . . .

The parties, magistrate, WCAC majority, WCAC dissenters, my colleagues, and I all agree that subsection 361(1) operates to exclude defendant from liability for worker's compensation benefits for the period that plaintiff was imprisoned. Also see *Jones v Dep't of Corrections*, 185 Mich App 65; 460 NW2d 229 (1990). However, if the "test" proposed by the lead opinion for subsection 361(1) were applied to the present circumstances, plaintiff would also be entitled to worker's compensation benefits during his period of imprisonment. This is because plaintiff was able to obtain and perform work during his imprisonment and thus "plaintiff is not unable to obtain or perform work for that reason." (Opinion by NEFF, J., *ante* at 565.) Judge NEFF's construction of § 361 and its test for application fails because its results, as applied to plaintiff, are simply illogical. In addition, such a construction renders the "commission of a crime" bar a nullity because no criminal conviction would prevent an employee from obtaining work from *all* employers.

The legislative history of how the Legislature came to exclude employers from worker's compensation liability as a result of an employee's "imprisonment or commission of a crime" is accurately traced in the brief of the Attorney General:

Senate bill 7, as introduced on January 10, 1985 (1985 Journal of the Senate 34), was intended to establish a Workers' Compensation Appellate Commission and Hearing Judges. As introduced, there was no mention in the bill of any change to § 361(1).

A substitute (S-4) was reported favorably out of the Senate Committee on Labor on May 22, 1985 (1985 Journal of the Senate 904).

The bill passed the Senate on May 23, 1985 (1985 Journal of the Senate 919).

On June 24, 1985 the House Committee on Labor reported out substitute (H-4) (1985 Journal of the House 1442), with still no mention of § 361(1).

During the debate, on June 25, 1985, Rep. Engler moved to amend (H-4) as follows, by adding at the end of § 361(1):

"However, an employer shall not be liable for compensation under section 351, 371(1), or this subsection for such periods of time that the employee is unable to obtain or perform work because of imprisonment, commission of a crime, discharge for good cause, voluntary retirement, or a personal accident or illness that is unrelated to the personal injury." (1985 Journal of the House 1499-1500.)

Then, there prevailed the motion of Representatives Engler and Ciaramitaro to strike out the comma after "crime," and all words following, so that the motion then read:

"However, an employer shall not be liable for compensation under section 351, 371(1), or this subsection for such periods of time that the employee is unable to obtain or perform work because of imprisonment, [or] commission of a crime." (1985 Journal of the House 1499).

The amended motion was adopted (1985 Journal of the House 1500).

There were no further changes by either the House or the Senate, and, with immediate effect, this wording became law when deposited with the Secretary of State on July 30, 1985.

Before this legislation (1985 PA 103), a disabled worker could draw worker's compensation benefits while imprisoned. *Sims v R D Brooks, Inc*, 389 Mich 91; 204 NW2d 139 (1973). Further, a criminal conviction would not disqualify a worker from receiving benefits. *DeMars v Roadway Express, Inc*, 99 Mich

App 842; 298 NW2d 645 (1980). The Engler amendment was obviously intended to change the law. In this regard, shortly after the enactment of 1985 PA 103, the Worker's Compensation Appeal Board in *Bush v Murco, Inc*, 1986 WCABO 1079, 1081, discerned the following legislative intent:

> Presumably the primary motivation behind the enactments of Sections 301(10) and 361(1) is *Sims v R D Brooks, Inc*, 389 Mich 91 (1973), and other cases similar thereto. Plaintiff in *Sims* was ruled entitled to benefits in spite of his incarceration. The Legislature by enacting the above-mentioned sections cured, what to some seemed, an apparent injustice. Incarceration, it should be noted, both placed plaintiff on the "public rolls" and rendered him incapable of accepting "favored work." The former runs counter to the purpose behind the establishment of the Act. *The latter prevents the employer from mitigating his compensation liability.* [Emphasis added.]

When viewed in context, the Engler amendment references the plaintiff's inability to obtain or perform work from his employer because of specified circumstances. These included not only imprisonment and commission of a crime, but also discharge for good cause, voluntary retirement, or accident or illness unrelated to the worker's disability. Although ultimately the three latter categories were not adopted, the exclusion of benefits, when read in context, is tied to the employee's ability to work for his employer. Such events break the causal connection between the employee's original injury and the employer's liability. The inquiry necessitated by the amendment is whether the plaintiff's inability to work for the defendant is due to his work-related disability or an intervening cause: (discharge for good cause,

voluntary retirement, unrelated accident or illness,) imprisonment, or conviction of a crime.

Recently, in *Kelley v Desai Constr, Inc*, 2000 Mich ACO 2436, 2438; 14 MIWCLR 1227 (2000), the WCAC acknowledged that there is no employer worker's compensation liability when the employee's inability to obtain or perform work from the employer is due to a subsection 361(1) bar:

> The primary rule governing interpretation of statutes is to ascertain and give effect to the intention of the legislature, to each word, sentence and section of the statute in question. *State ex rel Wayne Co Prosecuting Attorney v Levenburg*, 406 Mich 455 [280 NW2d 810] (1979). Here, the intent of subsection 361(1) appears to be to deny benefits to those injured employees whose incarceration is an impediment to employment. Such employees have, in effect, removed themselves from the workforce by committing a crime for which incarceration results. *Because imprisonment forecloses an employer from finding reasonable employment for its injured employee, its right to reduce its liability is denied. Thus, without the statutory provision, such an employer would actually be punished by virtue of its employee's incarceration.* [Emphasis added.]

I agree with the above statement and would apply its rationale to plaintiff's conviction of a crime. In my view, such a construction of the statute is consistent with the plain meaning of the statute and its intent to terminate an *employer's* liability for specified actions of its employee. Here, it is plaintiff's commission of a felony that prevents defendant from mitigating its worker's compensation liability. The causal connection between plaintiff's original injury and defendant's liability has been broken by plaintiff's felony conviction that now bars defendant from rehiring plaintiff. The break in the chain of causation occurs as a

matter of law, not as a matter of fact. Accordingly, an evidentiary hearing on this issue is a spurious and futile exercise. Under subsection 361(1), it is plaintiff, not defendant, who must suffer the consequences of his misconduct.

In summary, this case involves the combined effect of two interrelated statutes. In this regard, it is a fundamental rule of statutory construction that when two statutes relate to the same subject or share a common purpose they are to be read in pari materia and must be read together. *State Treasurer v Schuster*, 456 Mich 408, 417; 572 NW2d 628 (1998); *Jennings v Southwood*, 446 Mich 125, 136-137; 521 NW2d 230 (1994). As the Supreme Court stated in *State Treasurer*, *supra* at 417, quoting with approval from *Detroit v Michigan Bell Telephone Co*, 374 Mich 543, 558; 132 NW2d 660 (1965):

> "Statutes in pari materia are those which relate to the same person or thing, or the same class of persons or things, or which have a common purpose. It is the rule that in construction of a particular statute, or in the interpretation of its provisions, all statutes relating to the same subject, or having the same general purpose, should be read in connection with it, as together constituting one law, although enacted at different times, and containing no reference one to the other." [Citations omitted.]

Subsection 361(1) of the worker's compensation act is clear that defendant is not liable for worker's compensation benefits when plaintiff "is unable to obtain or perform work because of imprisonment *or commission of a crime.*" (Emphasis added.) Because, *as a matter of law*, plaintiff is unable to work for defendant because of his commission of a felony, MCL 791.205a, under the plain language of the worker's

compensation act, benefits are not owed by defendant. MCL 418.361(1).

I would reverse.